OPINION
{¶ 1} This appeal is taken from a final judgment of the Juvenile Division of the Trumbull County Court of Common Pleas. Layla Simkins ("appellant") appeals the trial court's judgment terminating her parental rights and granting permanent custody of her minor son, Raphael Simkins ("Raphael"), to the Trumbull County Children Services Board ("appellee"). For the foregoing reasons, we affirm the decision of the trial court in this matter.
{¶ 2} The following unrebutted testimony was presented at the March 18, 2002 hearing. Raphael Simkins was born on April 18, 2000. At the time of his birth, the record indicates Raphael's father had abandoned both him and appellant. The father has not been seen since the week prior to appellant's delivery of Raphael. Appellant was nineteen years of age at the time she gave birth to Raphael. The record also indicates appellant has a history of mental health problems dating back to the age of thirteen. Appellant has been diagnosed with "Dysthymic Disorder, Anxiety and Schizotypal Personality Disorder, and Thought Disorder with possible Psychosis." As a result of her condition, appellant is prone to frequently lose control of her emotions, sometimes losing control for several hours at a time, crying uncontrollably throughout the episodes. During one episode, appellant was so out of control that the police had to be summoned. On at least two other occasions, a counseling service caseworker was also summoned to try and help appellant.
{¶ 3} Appellant had taken Raphael to the doctor only once during the first nine months of his life, and failed to adequately clothe and feed him, insisting that two ounces of formula was enough for a young baby in an eight to nine hour period. Raphael was also behind on his immunizations. Appellant was jobless and she did not know how to drive a car. Appellee then received information about appellant's situation. Appellant's lack of care for Raphael culminated in January of 2001, when, on the day Raphael was placed in foster care, the agency had to take Raphael to Urgent Care for wheezing and a 100-degree fever. Raphael was subsequently diagnosed with asthma.
{¶ 4} Throughout this period, the record indicates appellant repeatedly stopped receiving therapy for her condition, refused medication, and declined the assistance of various family support and parenting agencies. At the January 19, 2001 adjudicatory hearing, the trial court found Raphael to be a dependent child and placed him in the temporary custody of appellee, noting appellant's mental health condition, her resistance to the available parenting support agencies, and her housing situation. As part of her reunification plan, appellant was ordered to resume receiving mental health services, resume taking her medication, find employment, and obtain independent housing for her and her son.
{¶ 5} Appellant failed to adhere to the case plan, continued to resist mental health services and medication, and relocated to North Jackson in Mahoning County, Ohio, where she lived in a single motel room with her live-in boyfriend that contained only one twin bed. Appellant's only attempt at employment consisted of washing dishes at the motel restaurant for approximately fifteen to thirty hours a week at minimum wage. This job earned appellant approximately $400 per month. There is no indication that appellant was receiving any financial contribution from her boyfriend.
{¶ 6} The record indicates appellant resided in Mahoning County from March 2001 until February 2002. Again, during that time, appellant had ceased all mental health and social services related to her reunification plan. While residing in Mahoning County, appellant was granted supervised visitation with Raphael once a week for an hour and a half. Appellant was never granted unsupervised visitation with her son. As appellant had failed to make any progress regarding her case plan, appellant's caseworker determined that reunification was not foreseeable. Furthermore, appellant was ordered by the trial court to pay $75 a month in child support on May 31, 2001. Appellant never made any payments as ordered by the court. Appellee then moved for permanent custody on February 25, 2002. On May 7, 2002, following six days of hearings, the magistrate recommended that the parental rights of appellant be terminated.
{¶ 7} On November 1, 2002, the trial court overruled appellant's objections to the magistrate's decision and adopted the findings of the magistrate, terminating appellant's parental rights. This timely appeal followed, and appellant asserts the following assignment of error for our review:
{¶ 8} "[1.] The trial court erred to the prejudice of appellant and violated appellant's right to due process of law in overruling objections to the magistrate's decision and without first reviewing the transcript of proceedings before the magistrate."
{¶ 9} Within her sole assignment of error, appellant argues that the trial court erred in failing to review the transcript of the magistrate's hearing, and as a result, the termination of appellant's parental rights was not supported by clear and convincing evidence. We disagree with appellant.
{¶ 10} In arguing that the trial court failed to review the transcript of the magistrate's hearing prior to making its decision, appellant is essentially arguing that the trial court's adoption of the magistrate's decision was flawed. This court will not overturn a trial court's adoption of a magistrate's decision absent an abuse of discretion. In re Kelley, 11th Dist. No. 2002-A-0088, 2003-Ohio-194, 2003 Ohio App. LEXIS 189. An abuse of discretion is more than merely an error of judgment or law; it connotes a decision that is arbitrary, unreasonable, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
{¶ 11} Civ.R. 53(E)(3)(b) states "Objections shall be specific and state with particularity the grounds of objection. ***. Any objection to a finding of fact shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that fact or an affidavit of that evidence if a transcript is not available." In her objection, appellant stated that the magistrate's decision was "against the law" and "against the manifest weight of the evidence." However, appellant failed to provide the trial court with an accompanying transcript. In a June 10, 2002 order, the trial court stated that appellant's affidavit was "inadequate since an actual transcript is available ***." The trial court then gave appellant until August 1, 2002, to provide a transcript. Appellant did not provide the trial court with a transcript until August 22, 2002. As a result, the guardian ad litem motioned the trial court to exclude consideration of the transcript in reviewing appellant's objections. This motion was granted on November 1, 2002. In its entry, the trial court noted that in addition to being late with her transcript, appellant made no other motions or attempts to modify her "inadequate" objections to the trial court. As a result, the trial court refused to consider any additional evidence proffered by appellant pursuant to Civ.R. 53(E)(4)(b).
{¶ 12} While the trial court did eventually have an actual transcript, it was still without adequate, specific, and particular objections from appellant. The consequences of an objecting party failing to state an objection with particularity is that the trial court may affirm the magistrate's decision without considering the merits of the objection. Civ.R. 53(E)(3); State ex rel. Cleveland Steel Erectors Corp. v. Stewart (1999), 86 Ohio St.3d 578; Waddle v. Waddle (Mar. 30, 2001), 11th Dist. No. 2000-A-0016, 2001 Ohio App. LEXIS 1551. As appellant failed to state her objections with specificity and particularity, the trial court could decline to review the transcript. At that point, the trial court was left to correct any error of law or other defect that appeared on the face of the magistrate's decision. Cottle v. Cottle (Dec. 11, 1998), 11th Dist. No. 97-P-0091, 1998 Ohio App. LEXIS 5984, *9; Civ.R. 53(E)(4)(a). Thus, our limited scope of review fails to reveal that the trial court erred in refusing to review the transcript or abused its discretion in adopting the magistrate's decision on its face. Appellant's argument is without merit.
{¶ 13} As a result, appellant cannot argue the specific findings of fact and conclusions of law made by the magistrate. In re Rhoads (Feb. 4, 1994), 11th Dist. No. 93-G-1763, 1994 Ohio App. LEXIS 363. However, in the interests of justice, we proceed to briefly consider the trial court's application of the law to the facts.
{¶ 14} Appellant also argues that the trial court's decision was not supported by clear and convincing evidence. We again disagree with appellant. Generally, parents have a paramount right to custody of their minor children. In re Murray (1990), 52 Ohio St.3d 155. However, this right is not absolute.
{¶ 15} R.C. 2151.41.4(B)(1) provides that permanent custody of a minor child can be granted to a public services agency if it is demonstrated by clear and convincing evidence that: (1) the granting of such a motion would be in the best interest of the child; and (2) the child cannot, or should not, be placed with either of his parents within a reasonable time. Rhoads, supra, (emphasis added). An appellate court will not reverse a juvenile court's termination of parental rights and award permanent custody to an agency if the judgment is supported by clear and convincing evidence. In re Palladino, 11th Dist. No. 2002-G-2445, 2002-Ohio-5606, 2002 Ohio App. LEXIS 5613; In re Taylor (June 11, 1999), 11th Dist. No. 97-A-0046, 1999 Ohio App. LEXIS 2620. Clear and convincing evidence is more than a mere preponderance of the evidence. Instead, it is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. In re Adoption of Holcomb (1985), 18 Ohio St.3d 361,368; Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
{¶ 16} As indicated by our previous analysis, appellant was found to be lacking in her ability to take care of herself and her child. As part of her reunification plan, appellant was required to find suitable independent housing. At the time of the hearing, appellant had not done so. When asked why she had not obtained suitable housing, appellant stated, "I can't afford to do that, and I would rather live with my boyfriend." Also, appellant has ignored the child support order of the trial court and refused to make any child support payments for Raphael. When appellant was asked why she could not obtain more lucrative employment, appellant responded that she did not drive, nor did she have a telephone. As to her resistance to medical counseling and medication, appellant claimed she "never got time" to call and set up her appointments stating: "I get caught up in taking care of other things."
{¶ 17} Appellant has never been granted unsupervised visitation, never paid child support, failed to find adequate housing, and refused mental health counseling services. The guardian ad litem noted in his report that Raphael has "flourished with his foster family", the same family that Raphael, now almost three years of age, has lived with since he was nine months old. The guardian ad litem also stated that Raphael has come to know his foster parents as his mother and father, and that adoption is a viable option for his foster family.
{¶ 18} Based on the above, we conclude that the trial court's decision to grant permanent custody of Raphael to appellee was supported by clear and convincing evidence. Appellant has failed to make sufficient progress towards any of her reunification goals even though she had numerous, willing agencies and resources at her disposal. The above reasons have all been found to be valid to support a trial court's granting of permanent custody to an agency. Rhoads, Palladino, supra.
{¶ 19} For the foregoing reasons, we hold appellant's sole assignment of error to be without merit. The decision of the trial court in this matter is hereby affirmed.
DONALD R. FORD, P.J., and CYNTHIA WESTCOTT RICE, J., concur.